Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD H. BLUM, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>POSITIVE PHYSICIANS INSURANCE COMPANY; JOHN DOES 1-5, and JANE DOES 1-5, FICTITIOUS NAMES WHOSE PRESENT IDENTITIES ARE UNKNOWN,<br><br>Defendants. | Civil Action No. 20-5423 (SRC)<br><br>**OPINION & ORDER** |

**CHESLER**, District Judge

      Before the Court is Defendant Positive Physicians Insurance Company's ("Defendant" or "Positive Physicians") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, (D.E. No. 65), and Plaintiff Richard H. Blum's cross motion for summary judgment, (D.E. No. 66). The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Having considered the parties' submissions, (D.E. No. 65 ("Def. Mov. Br."); D.E. No. 66 ("Pl. Opp. Br."); D.E. No. 68 ("Def. Reply Br.")), the Court decides this matter without oral argument. See Fed. R. Civ. P. 78(b). As set forth below, the Court DENIES Defendant's motion for summary judgment, (D.E. No. 65), and DENIES Plaintiff's cross motion for summary judgment, (D.E. No. 66).

    **I.**      **BACKGROUND**

This case arises from the denial of professional liability insurance coverage relating to an underlying medical malpractice claim. Plaintiff is a medical doctor specializing in obstetrics and gynecology. (D.E. No. 1, Ex. A to Notice of Removal ("Compl.") ¶ 1.) Defendant Positive Physicians provides insurance coverage, including professional liability insurance, to physicians. (Id.)

On April 1, 2019, Defendant issued an insurance policy to Plaintiff with an effective date of April 1, 2019 to April 1, 2020, and a retroactive date of January 1, 2003. (D.E. No. 65-1, Defendant's Statement of Material Facts ("Def.'s SMF") ¶ 1; (D.E. No. 66-6, Ex. B to the Certification of Anthony M. Juliano ("Juliano Cert.") ("the Policy").) In October 2019, Plaintiff learned of a malpractice lawsuit ("the Markham Lawsuit") filed against him regarding the caesarean delivery of a baby from October 9, 2008 ("the Markham delivery"). (Def.'s SMF ¶ 2; D.E. No. 65-2, Ex. B to the Certification of Michael Dolich ("Dolich Cert.").) Plaintiff subsequently sought defense coverage under the Policy from Defendant. (D.E. No. 66-1, Plaintiff's Counterstatement of Material Facts ("Pl.'s SMF") ¶ 19.) Defendant initially assigned counsel to Plaintiff for the underlying malpractice action, but later informed Plaintiff that coverage would be denied for the Markham Lawsuit because Plaintiff failed to report the Markham delivery and a 2008 State Board investigation in his application materials. (Pl.'s SMF ¶¶ 19-25.) Defendant is currently providing defense coverage to Plaintiff in the Markham Lawsuit subject to a reservation of rights and the outcome of this declaratory judgment action. The issue before the Court is, whether based on the record, it can be said that as a matter of law Plaintiff knew of and intended not to disclose the Markham delivery in his application for insurance to serve as a basis for Defendant to deny insurance coverage.

A. The Underlying Lawsuit

In October 2019, a lawsuit was filed against Plaintiff alleging that on October 9, 2008, while performing the caesarean delivery of a baby ("Baby Markham"), Plaintiff negligently and improperly attempted "vacuum extraction" causing an intracranial bleed and resulting in neurological conditions including cerebral palsy of Baby Markham.[1] (Def.'s SMF ¶¶ 2-3.) On October 13, 2008, Plaintiff prepared an Event Notification Form ("ENF") documenting the Markham delivery. (Pl.'s SMF ¶ 2; D.E. No. 66-10, Ex. F to the Juliano Cert. ("the ENF").) The ENF classifies the event as an "adverse outcome." (Id.; Def.'s SMF ¶ 7.) According to Plaintiff, his insurance carrier at the time, Obstetrics & Gynecologists Risk Retention Group of America ("OGRRGA"), required an ENF to be submitted for any potential case that may arise from an adverse outcome. (Def.'s SMF ¶ 8; D.E. No. 66-1, Plaintiff's Response to Defendant's Statement of Material Facts ¶ 8.) Plaintiff alleges that he did not submit the ENF to OGRRGA because he was informed by other physicians that there was no relationship between the condition of Baby Markham and the delivery performed by Plaintiff. (Def.'s SMF ¶ 6; Pl.'s SMF ¶ 3.) Plaintiff continued to treat the mother of Baby Markham for approximately one year after the Markham delivery. (Pl.'s SMF ¶ 4.)

B. The Policy

Plaintiff applied for professional liability insurance with Defendant in 2017 after his prior insurance carrier went out of business. (Pl.'s SMF ¶ 7; D.E. No 65-2, Ex. E to the Dolich Cert.) The application contained the following question on the Acknowledgement of Reporting Claims form:

> Do you have knowledge of any potential claim in which you may become involved, including without limitation, knowledge of any alleged injury arising out of the rendering or failure to render

---

[1] The Markham Lawsuit is presently pending in the Superior Court of New Jersey, Law Division, Union County. (D.E. No. 65-2, Ex. B to the Dolich Cert.)

> professional services *which may give rise to a claim or suit even if you believe the claim or suit would be without merit?*

> (D.E. No 65-2, Ex. E to the Dolich Cert. at 98 of 144) (emphasis added).)

Plaintiff answered no. (Def.'s SMF ¶ 15.) Plaintiff also certified that he had no knowledge of or information relating to serious medical incidents which could result in a claim for conditions, such as cerebral palsy, which had not been previously reported to insurance carriers. (Def.'s SMF ¶ 16.) Plaintiff further agreed that under the Policy any "failure to disclose any actual or threatened claims and incidents . . . which [he is] aware of, or which would be disclosed by a reasonable inquiry" could void coverage for any claim under the Policy. (Def.'s SMF ¶ 17.)

Plaintiff also submitted a Supplemental Application for claims made coverage with an effective retroactive date of January 1, 2003, and certified that he had no knowledge of any professional liability claims or incidents which have "been or likely to be asserted against [him] . . . which occurred on or after the requested Retroactive Date." (Def.'s SMF ¶ 19.) Plaintiff did not report the Markham delivery in any of the forms on his insurance application but reported two prior claims which were closed. (Def.'s SMF ¶¶ 20-21.) Plaintiff claims that he did not include the Markham delivery because he "did not recall the 2008 Baby Markham birth when he filled out the application forms in 2017" but he completed the "forms to the best of his knowledge and information and belief." (Pl.'s SMF ¶¶ 11-12; D.E. No. 66-7, Ex. C to Juliano Cert. ("Blum Deposition") at 69:23-71:5.) Plaintiff signed the application on January 25, 2017. (Def.'s SMF ¶ 23.)

In 2019, an insurance policy was issued to Plaintiff. Section P of the Policy provides:

> This insurance will be voidable as of the effective date at the option of the Company if its agreement to issue this insurance was materially based on information supplied by any insured that was later found to be false or fraudulent, ***but this condition does not***

4

> ***apply to any inadvertent or unintentional error or omission made by an insured in applying for this insurance.***

(The Policy at 23 (emphasis added).)

Exclusion J of the Policy states that coverage under the Policy does not apply to any claim "[a]rising from any medical incident that occurred after the retroactive date but before the policy period that an insured knew of and should reasonably have expected would result in a claim or had reported to a previous insurer." (The Policy at 17.)

### C. The Instant Declaratory Action

In February 2019, Plaintiff informed Defendant that a state board investigation from 2008 had been reactivated and Defendant defended Plaintiff in the investigation. (Pl.'s SMF ¶¶ 15-16.) Defendant also initially provided Plaintiff with coverage for the underlying Markham Lawsuit filed in October 2019. (Pl.'s SMF ¶ 20; D.E. No. 66-17, Ex. M to Juliano Cert.) In January 2020, Defendant learned that Plaintiff prepared an ENF on October 13, 2008, relating to the Markham delivery. (Def.'s SMF ¶ 29.) Defendant subsequently informed Plaintiff that it would disclaim coverage as it appeared to Defendant that Plaintiff had reported the matter to his previous insurance company but failed to report it to Defendant when applying for insurance in 2017. (D.E. No. 66-17, Ex. M to Juliano Cert.) Plaintiff alleges that Defendant also denied coverage because Plaintiff failed to report the 2008 state board investigation on his application for insurance in 2017. (Pl.'s SMF ¶ 25.)

Plaintiff brought this declaratory judgment action against Defendant in the Superior Court of New Jersey, Law Division, Union County on March 17, 2020, asserting claims for breach of contract and reliance/promissory estoppel. (D.E. No. 1.) On March 20, 2020, Plaintiff received a reservation of rights letter from Defendant advising Plaintiff that although Defendant intended to continue providing a defense to Plaintiff in the Markham Lawsuit, such defense was subject to a

5

reservation of its right to rescind the Policy under sections P and J of the Policy and the outcome of the instant declaratory judgment action. (Def.'s SMF ¶¶ 34-35; Pl.'s SMF ¶ 30.) Defendant filed an answer and counterclaim seeking rescission of the Policy and a declaration that the Policy is void because Plaintiff made a material misrepresentation in failing to disclose the Markham delivery. (Def.'s SMF ¶ 40.) Alternatively, Defendant seeks a determination of rights and obligations under the Policy and a declaration that Defendant has no duty to defend Plaintiff with respect to the Markham Lawsuit. (Def.'s SMF ¶ 41.) Defendant removed the case to this Court on May 1, 2020, based on diversity of citizenship. (D.E. No. 1.) On September 13, 2024, Defendant filed the presently pending motion for summary judgment, (D.E. No. 65), and on October 10, 2024, Plaintiff filed a cross motion for summary judgment, (D.E. No. 66).

## II.    LEGAL STANDARD

A court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the nonmovant's favor with regard to that issue." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998). "In evaluating a motion for summary judgment, a court must 'view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.'" Anyclo Int'l Inc. v. Cha, 2022 WL 1241307, at *2 (D.N.J. Apr. 27, 2022) (quoting Ayala v. Assured Lending Corp., 804 F. Supp. 2d 273, 278 (D.N.J. 2011)).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). See also Herbert v. Newton Mem'l Hosp., 933 F. Supp. 1222, 1229 (D.N.J. 1996), aff'd, 116 F.3d 468 (3d Cir. 1997) ("In deciding a summary judgment motion, however, the Court's role is not 'to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'") (quoting Anderson, 477 U.S. at 248). As such, the court "cannot resolve factual disputes in a motion for summary judgment." Vanguard Telecomms., Inc. v. S. New England Tel. Co., 722 F. Supp. 1166, 1176 (D.N.J. 1989), aff'd, 900 F.2d 645 (3d Cir. 1990).

"Issues such as intent and credibility are rarely suitable for summary judgment." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). "When a case turns on credibility determinations, summary judgment is inappropriate." Herbert, 933 F. Supp. At 1229 (citing Coolspring Stone Supply, Inc. v. Am. States Life Ins., 10 F.3d 144, 148 (3d Cir. 1993)). Once a moving party has met its burden, the non-moving party must "present actual evidence that creates a genuine issue as to a material fact for trial." Bacon v. Avis Budget Grp., Inc., 357 F. Supp. 3d 401, 413 (D.N.J. 2018), aff'd, 959 F.3d 590 (3d Cir. 2020) (citing Anderson, 477 U.S. at 248). If the non-moving party presents "specific facts showing that there is a genuine issue for trial" and a trier of fact could find in the non-moving party's favor, summary judgment must be denied. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "When the parties file cross-motions for summary judgment, the governing standard 'does not change.'" Manhattan Ford Lincoln, Inc. v. UAW Loc. 259 Pension Fund, 331 F. Supp. 3d 365, 380 (D.N.J. 2018) (citing Auto-Owners Ins. v. Stevens & Ricci, Inc., 835 F.3d 388, 401 (3d Cir. 2016)).

### III. DISCUSSION

In this declaratory judgment action, both parties move for summary judgment. In essence, the parties dispute whether (i) Defendant is entitled to rescind the Policy as a matter of law and (ii) Exclusion J of the Policy excludes Plaintiff from receiving coverage.

### A. Defendant's Arguments

Defendant argues that it is entitled to rescind the Policy as a matter of law because (i) Plaintiff made a material misrepresentation in the application for insurance when Plaintiff failed to report the Markham delivery and (ii) Plaintiff could not have honestly believed a claim would not be filed against him. (Def. Mov. Br. at 12-14.)

Defendant cites to the case of Liberty Surplus Insurance Corp. v. Nowell Amoroso, P.A., 189 N.J. 436 (2007), where the New Jersey Supreme Court affirmed a grant of summary judgment in favor of an insurer who denied coverage to an insured. In Liberty, the insured answered "no" to a question on an insurance application which asked whether there was any circumstance, act, error, or omission which could result in a legal malpractice claim against the insured. 189 N.J. at 443. The court found that the insured could not have honestly believed a claim would not be filed against it because at the time the insurance application was filed, the insured knew of judicial rulings against it, one of which occurred only a month before the insured applied for insurance. Id. at 449. The court noted that one would have to "ignore reality" to conclude that the insured "did not have knowledge that a claim might be filed against it when faced with a trial court and two Appellate Division decisions." Id. at 449. See also Liebling v. Garden State Indem., 337 N.J. Super. 447, 465 (App. Div. 2001) ("In these circumstances, which include . . . [plaintiff's] client's failure to respond to any of the letters [plaintiff] sent after losing the motion and the absence of any indication in those letters that the case had been dismissed, we are satisfied that not only would

8

no reasonable attorney have felt secure from a claim but that [plaintiff] did not honestly believe that he was secure.").

Relying on Liberty, Defendant argues that Plaintiff made a material misrepresentation in failing to report the Markham delivery in his application materials. Similar to Liberty, Plaintiff answered "no" to the following question when applying for insurance with Defendant:

> Do you have knowledge of any potential claim in which you may become involved, including without limitation, knowledge of any alleged injury, arising out of the rendering or failure to render professional services *which may give rise to a claim or suit even if you believe the claim or suit would be without merit?*

(D.E. No 65-2, Ex. E to the Dolich Cert. at 98 of 144.)

Plaintiff also certified that he had "no knowledge of any professional liability claims, circumstances, occurrences, incidents or conduct which has been or likely to be asserted against me . . . which occurred on or after the requested Retroactive Effective Date" and certified that he completed the application to the best of his "knowledge, information and belief" and agreed that any "misrepresentations, omissions, concealments of facts, or incorrect statements . . . which are fraudulent, or material . . . may result in denial of coverage." (Def. Mov. Br. at 16.)

Defendant asserts that Plaintiff's answer of "no" was a material misrepresentation and Plaintiff's "testimony at his deposition was such that he could not have honestly believed a claim would not be filed against him." (Def. Mov. Br. at 13-14.) A few days after the Markham delivery, Plaintiff classified the event as an adverse outcome on the ENF. (D.E. No. 66-10, Ex. F to the Juliano Cert.) At his deposition, Plaintiff was asked "[w]hen the term adverse outcome is used . . . could it mean that something problematic happened to the baby whether or not there's any fault attributable to the outcome?" (Blum Deposition at 23:13-26:15.) Plaintiff later stated yes and agreed that it was his belief that there was an adverse outcome, but Plaintiff was not at fault. (Id.)

9

Defendant states that Plaintiff cannot now argue that he did not think the Markham delivery would result in a claim because "even if Dr. Blum honestly believed that the birth, which resulted in a brain injury, was not as a result of malpractice, he cannot claim to honestly believe that a lawsuit would not follow" because he acknowledged at his deposition that adverse events can result in a claim, even if meritless.  (Def. Mov. Br. at 14.)

Defendant also argues that Plaintiff is not entitled to coverage under Exclusion J of the Policy.  Exclusion J excludes any claim "[a]rising from any medical incident that occurred after the retroactive date but before the policy period ***that an insured knew of and should reasonably have expected would result in a claim*** or had reported to a previous insurer."  (The Policy at 17 (emphasis added).)  Defendant argues that, for the same reasons set forth in support of Defendant's claim that it is entitled to rescind the Policy, Plaintiff "cannot state that he honestly believed that he did not reasonably expect that the Markham delivery would result in a claim" because in Plaintiff's deposition, "he acknowledged that adverse events, such as this, could result in a claim regardless of whether or not the claim has merit."  (Def. Mov. Br. at 18.)

### B. Plaintiff's Arguments

As it relates to whether Defendant may rescind the Policy, Plaintiff argues that summary judgment should not be granted in favor of Defendant, but instead in favor of Plaintiff because although the Policy "will be voidable . . . if its agreement to issue th[e] insurance was materially based on information supplied by any insured that was later found to be false or fraudulent," under section P of the Policy, "***this condition does not apply to any inadvertent or unintentional error or omission by an insured in applying for this insurance***."  (The Policy at 23 (emphasis added).)  Plaintiff states that in 2017, he did not disclose the Markham delivery because he did not recall the event from 2008 and he filled out the insurance application materials "to the best of his knowledge

10

and information and belief" at the time. (Pl.'s SMF ¶ 12.) Plaintiff argues that "it is undisputed that [he] did not intend on making any false statement or omission on his application for insurance." (Pl. Opp. Br. at 10.) In support, Plaintiff points to the deposition of a representative of Defendant who "clearly testified that [Positive Physicians] was not aware of any facts to suggest that Dr. Blum intentionally withheld any material information on his application for insurance." (Pl. Opp. Br. at 11; D.E. No. 66-9, Ex. E to Juliano Cert. at 54:19-55:1.) Plaintiff also argues that the instant matter is distinguishable from Liberty because in Liberty, the insurance application was filed one month after the insured learned of an unfavorable appellate level decision whereas here, Plaintiff submitted the insurance application in 2017, more than eight years after the Markham delivery. (Pl. Opp. Br. at 10.).

Plaintiff further argues that under Exclusion J of the Policy, Defendant cannot establish that at the time Plaintiff submitted his application for insurance in 2017, Plaintiff "knew of and should have reasonably expected" that the Markham delivery would result in a claim. (Pl. Opp. Br. at 6.) Plaintiff alleges that he did not submit the ENF to his insurance carrier at the time because he was informed by other physicians that there was no relationship between the condition of Baby Markham and the delivery performed by Plaintiff. (Pl.'s SMF ¶ 3.) In support, Plaintiff notes that he continued to treat Baby Markham's mother for approximately one year after Baby Markham was born, and during this time period no one "ever requested Ms. Markham's medical records from Dr. Blum's office" or "conveyed to Dr. Blum [anything] to suggest Ms. Markham was holding Dr. Blum responsible for Baby Markham's condition." (Blum Deposition at 44:17-22; Pl.'s SMF ¶¶ 4-5.) Plaintiff further reiterates that he "did not recall the October of 2008 baby Markham birth when he filled out the application forms in 2017" and he "filled out the forms to

11

the best of this knowledge and information and belief." (Pl. Opp. Br. at 7; Blum Deposition at 57:23-64:3; 69:23-71:5.)

### C. Analysis

Here, the Court finds that both parties' motions for summary judgment must be denied as there are issues of intent and credibility for the jury to decide. An insurer may rescind an insurance policy upon a showing of "(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party." First Am. Title Ins. v. Lawson, 177 N.J. 125, 136–37 (2003). However, even if the "agreement to issue th[e] insurance was materially based on information supplied by any insured that was later found to be false or fraudulent," under section P of the Policy, the Policy will not be voidable due to "any inadvertent or unintentional error or omission by an insured in applying" for insurance. (The Policy at 23.) Whether or not Defendant may rescind the Policy depends on whether Plaintiff made an "inadvertent or unintentional error or omission" under section P of the Policy when he failed to disclose the Markham delivery on his insurance application. (The Policy at 23.) Similarly, whether or not Exclusion J applies to deny Plaintiff coverage depends on whether Plaintiff "knew of and should reasonably have expected" the 2008 Markham delivery "would result in a claim." (The Policy at 17.) The Court finds that, regardless of whether an objective or subjective standard applies in interpreting the Policy, the total circumstances surrounding Plaintiff's decision not to include the Markham delivery probe into the intent and credibility of Plaintiff at the time Plaintiff completed the application for insurance in 2017 and these issues must be explored at trial.

"It is well-established that 'issues such as intent and credibility are rarely suitable for summary judgment,' and are best left to the factfinding role of a jury." Anyclo, 2022 WL 1241307,

at *2 (citing <u>Wishkin</u>, 476 F.3d at 184). "Issues of knowledge and intent are particularly inappropriate for resolution by summary judgment, since such issues must often be resolved on the basis of inferences drawn from the conduct of the parties." <u>Coolspring</u>, 10 F.3d at 148 (quoting <u>Riehl v. Travelers Ins.</u>, 772 F.2d 19, 24 (3d Cir. 1985)). The Third Circuit has held that in cases "where a material fact cannot be resolved without weighing the credibility of a particular witness or individual—such as when the defendant's liability turns on an individual's state of mind and the plaintiff has presented circumstantial evidence probative of intent" there is a genuine issue of material fact and "summary judgment is inappropriate because there is a sufficient quantum of evidence on either side for reasonable minds to differ." <u>Schoonejongen</u>, 143 F.3d at 130.

The Court finds that there are material issues of disputed fact relating to Plaintiff's intent and credibility which preclude granting summary judgment in either party's favor. The issue of whether any failure to disclose information was inadvertent or not turns on Plaintiff's intent and is not appropriate for resolution on a summary judgment motion. On this motion, the Court cannot find that as a matter of law, Plaintiff's nondisclosure was or was not inadvertent. A jury could reasonably find in favor of either party and there is sufficient evidence in the record on both sides to support either conclusion.

Given the supporting evidence, Plaintiff's assertion that he in fact did not recall the Markham delivery is sufficient to create an issue of material fact as to whether Plaintiff knew of and intentionally failed to disclose the event. Defendant states that Plaintiff knew the Markham delivery could result in a claim and argues that Plaintiff's deposition testimony warrants granting summary judgment in Defendant's favor. (Def. Reply Br. at 2-3.) Defendant argues that because Plaintiff deemed the Markham delivery to be an adverse outcome, he is "also aware that any adverse outcome could result in a claim against him, even if he did nothing wrong" and Exclusion

13

J applies to disclaim coverage. (Def. Reply Br. at 3.) The Court disagrees. While the deposition testimony of Dr. Blum stating that the Markham delivery was an adverse outcome which could result in a claim weighs in favor of Defendant, the Court must construe all reasonable inferences in favor of Plaintiff. Regardless of his acknowledgement that the Markham delivery was an adverse outcome, Plaintiff simply states that he "did not include the Baby Markham delivery [in his insurance application] because it did not occur to him when he filled out the application forms in 2017, more than eight (8) years after Baby Markham's birth." (Pl. Opp. Br. at 7.) Plaintiff cites to his deposition testimony supporting such statements. (Blum Deposition at 57:23-64:3.) A trier of fact could reasonably credit this.

Unlike Liberty, the facts at issue do not demonstrate that Plaintiff could not have "honestly believed" a claim would not arise. Indeed, this is not a situation where "the evidence in the record is so one sided" that the insurer "must prevail as a matter of law." Liberty, 189 N.J. at 449. The situation at hand involves the delivery of Baby Markham which occurred eight years before Plaintiff filed for insurance in 2017, not one month before as in Liberty. Id. The passage of time of eight years provides a basis for a reasonable jury to conclude that Plaintiff in fact, did not recall the 2008 Markham delivery at the time he filled out his application for insurance coverage in 2017. Therefore, a jury could conclude that under Exclusion J, Plaintiff cannot be found to have known "of and should reasonably have expected" the 2008 Markham delivery to "result in a claim." Moreover, a jury could find that such nondisclosure was instead an inadvertent omission under section P of the Policy. Whether the portions of Dr. Blum's deposition testimony are truthful is a job for a trier of fact, not the Court. Thus, Defendant's motion must be denied.

Plaintiff's cross motion for summary judgment must also be denied. A trier of fact could reasonably credit Defendant's evidence. Despite Plaintiff's contrary statements, Defendant states

14

that Plaintiff knew the Markham delivery was an adverse outcome which could result in a claim. (Def. Mov. Br. at 14.) Although the ENF was allegedly never submitted to Plaintiff's insurance carrier at the time, given the fact that Plaintiff prepared the ENF indicating that the Markham delivery was an adverse outcome, a trier of fact could nevertheless find Plaintiff's preparation of the ENF to be indicative of the fact that Plaintiff regarded it as a significant and potentially important incident, and one in which a jury could find that Plaintiff did in fact remember the event but chose not to disclose it.[2]

In short, under the evidence proffered, a reasonable jury could find for either party. Both parties have failed to meet the burden of demonstrating that there is no genuine dispute of material fact and reasonable people may draw different inferences from the same proffered evidence. It cannot be stated that as a matter of law Plaintiff recalled the 2008 Markham delivery when applying for insurance in 2017 and intentionally omitted it nor can it be stated that Plaintiff did not recall the event, and any nondisclosure was an inadvertent omission. It remains for the jury to ascertain the credibility of the parties and the weight of the evidence. Therefore, neither party is entitled to summary judgment.

---

[2] According to Plaintiff, Defendant further claims that it is entitled to deny coverage to Plaintiff because Plaintiff failed to disclose that he had been the subject of a state medical board investigation in 2008 when applying for insurance in 2017. (Pl. Opp. Br. at 1-2; Pl.'s SMF ¶ 25.) The state medical board investigation was settled in 2008 and reopened in 2019 after it was discovered that Plaintiff failed to comply with the requirements of the 2008 settlement. (Pl.'s SMF ¶¶ 15-16.) The Court notes that the 2008 medical board investigation was not related to the 2008 Markham delivery in any regard. Dr. Blum contends that he did not include the 2008 medical board investigation in his application for insurance because he did not recall the investigation at the time he applied for insurance in 2017. (Pl.'s SMF ¶ 13; Pl. Opp. Br. at 8-9.) For the same reasons the Court concludes that there is a contested issue of fact as to whether the failure to disclosure the Markham delivery was inadvertent or intentional, the Court finds that same analysis applies here, given the lapse of time between the 2008 medical board investigation and the 2017 application for insurance, as well as Dr. Blum's testimony that he did not recall the event. Therefore, it remains for the jury to weigh the evidence and credibility of the parties as to this issue and summary judgment is not warranted for either party.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment, (D.E. No. 65), is DENIED and Plaintiff's cross motion for summary judgment, (D.E. No. 66), is also DENIED.

                                                                        s/Stanley R. Chesler
                                                  STANLEY R. CHESLER, U.S.D.J.

Dated: November 19, 2024